## NEW HAMPSHIRE FIRE INSURANCE CO. *v.* SCANLON, DISTRICT DIRECTOR OF INTERNAL REVENUE, ET AL.

No. 339. Argued March 22, 1960.—Decided April 25, 1960.

*Jack Hart* argued the cause for petitioner. With him on the brief was *Myron Engelman.*

*Richard M. Roberts* argued the cause for respondents. On the brief for respondent Scanlon were *Solicitor General Rankin, Howard A. Heffron, Wayne G. Barnett, Robert N. Anderson* and *Joseph Kovner.*

Mr. Justice Black delivered the opinion of the Court.

Acting pursuant to statutory authority to levy, distrain or seize property or rights to property belonging to a delinquent taxpayer,[1] respondent Scanlon, District Director of Internal Revenue, served notices of levy on the City of New York demanding that it pay to the Director money alleged to be due from the city to respondent Acme Cassa, Inc., under a contract for the construction of a school playground. The purpose of this distraint was to secure payment of taxes owing by taxpayer Acme Cassa to the Federal Government. The petitioner, New Hampshire Fire Insurance Co., then brought this summary proceeding, by a "petition" in a United States District Court, seeking to have the levy quashed. The "petition" alleged that the indebtedness of the city for the construction work was not owing to Acme Cassa but to the petitioner because, under its obligation as surety for Cassa's faithful performance of the construction contract, the insurance company had been compelled to complete the playground after Cassa got into financial difficulties and defaulted on the job. Pointing out that petitioner could institute a plenary suit for recovery on the indebtedness if it chose, the District Court held that it was without jurisdiction to determine the respective rights of the parties in a summary proceeding, and accordingly dismissed the petition.[2] The Court of Appeals for the Second Circuit affirmed upon the opinion of the District Court.[3] Because the Court of Appeals for the Third Circuit had previously held that a

---

[1] I. R. C. of 1954 §§ 6331, 6332.

[2] *New Hampshire Fire Ins. Co.* v. *Scanlon,* 172 F. Supp. 392. The District Court relied on two Second Circuit cases, *Goldman* v. *American Dealers Service,* 135 F. 2d 398, and *In re Behrens,* 39 F. 2d 561, holding that parties from whom property was seized could not avail themselves of summary proceedings for its recovery.

[3] *New Hampshire Fire Ins. Co.* v. *Scanlon,* 267 F. 2d 941.

claimant of property so distrained for tax delinquencies need not resort to a plenary action but could adjudicate the controversy summarily, *Ersa, Inc.* v. *Dudley,* 234 F. 2d 178, 180, *Raffaele* v. *Granger,* 196 F. 2d 620; *Rothensies* v. *Ullman,* 110 F. 2d 590, we granted certiorari to resolve the intercircuit conflict. 361 U. S. 881.

Summary trial of controversies over property and property rights is the exception in our method of administering justice. Supplementing the constitutional, statutory, and common-law requirements for the adjudication of cases or controversies, the Federal Rules of Civil Procedure provide the normal course for beginning, conducting, and determining controversies. Rule 1 directs that the Civil Rules shall govern all suits of a civil nature, with certain exceptions stated in Rule 81 none of which is relevant here. Rule 2 directs that "There shall be one form of action to be known as 'civil action.'" Rule 3 provides that "A civil action is commenced by filing a complaint with the court." Rule 56 sets forth an expeditious motion procedure for summary judgment *in an ordinary, plenary civil action.* Other rules set out in detail the manner, time, form and kinds of process, service, pleadings, objections, defenses, counterclaims and many other important guides and requirements for plenary civil trials. The very purpose of summary rather than plenary trials is to escape some or most of these trial procedures. Summary trials, as is pointed out in the petitioner's brief, may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even *ex parte.*[4] Such summary trials, it

---

[4] See *Central Republic Bank & Trust Co.* v. *Caldwell,* 58 F. 2d 721, 731–732, from which petitioner's brief quoted the following:

"The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon petition, and proceeds without formal pleadings; the latter proceeds upon formal

has been said, were practically unknown to the English common law and it may be added that they have had little acceptance in this country.[5] In the absence of express statutory authorization,[6] courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law.[7] Especially when a con-

---

pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or by rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had."

[5] See, e. g., *United States* v. *Casino,* 286 F. 976; *Clarke* v. *City of Evansville,* 75 Ind. App. 500, 505, 131 N. E. 82, 84 ("No cause can be tried summarily (otherwise than in due course), except perhaps cases of contempt of court; for our Code, as well as the common law, is a stranger to such a mode of trial"); *Billings Hotel Co.* v. *City of Enid,* 53 Okla. 1, 5, 154 P. 557, 558. Cf. *Western & Atlantic R. Co.* v. *Atlanta,* 113 Ga. 537, 38 S. E. 996; *State* v. *Howse,* 134 Tenn. 67, 183 S. W. 510.

[6] For examples of such authorization, see §§ 67a (4) & f (4) of the Bankruptcy Act, 11 U. S. C. §§ 107 (a)(4) & (f)(4). See also § 2a (7), 11 U. S. C. § 11 (a)(7); *Thompson* v. *Magnolia Co.,* 309 U. S. 478, 481; *Harris* v. *Brundage Co.,* 305 U. S. 160, 162–164.

[7] See Judge Learned Hand's opinion in *United States* v. *Casino,* 286 F. 976, at 978–979: "It is clear that the owner of property unlawfully seized has without statute no summary remedy for a return of his property. . . . He may have trespass, or, if there be no statute to the contrary, replevin; but, just as in our law no public officer has any official protection, so no individual has exceptional remedies for abuse of power by such officers. We know no 'administrative law' like that of the Civilians."

See also, for example, *United States* v. *Gowen,* 40 F. 2d 593, 598; *Weinstein* v. *Attorney General,* 271 F. 673; *United States* v. *Farrington,* 17 F. Supp. 702; *In re Allen,* 1 F. 2d 1020; *Sims* v. *Stuart,* 291 F. 707; *Lewis* v. *McCarthy,* 274 F. 496; *United States* v. *Hee,* 219 F. 1019; *In re Chin K. Shue,* 199 F. 282. Cf. *Taubel-Scott-Kitz-*

troversy like this is begun by peremptory seizure without an initial determination of the taxpayer's liability, there is neither justification nor authority for carving out an exception to the uniform and regular civil procedure laid down by the Federal Rules, either for the benefit of the party from whom the property was seized or for any other claimant.

Petitioner contends, however, that there is express statutory approval for summary trial of a claim for property seized by Internal Revenue officers. For this contention petitioner relies on 28 U. S. C. § 2463 which reads as follows:

> "All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

Petitioner's argument is that this section puts property seized by revenue officers in the custody of the courts and that it necessarily follows that a court having such custody has power to dispose of the issue of ownership summarily. We cannot agree with either contention.

Property seized by a revenue officer for delinquent taxes is lawfully held by that officer in his administrative capacity and he has broad powers over such property. See *Murray* v. *Hoboken Land & Improvement Co.*, 18 How. 272, and *Phillips* v. *Commissioner*, 283 U. S. 589, 595–597. The history of § 2463 plainly indicates a congressional purpose to protect that property in the revenue officer's custody and not to transfer that custody either actually or fictionally into the custody of the federal courts. The section was originally adopted in 1833 to meet a particular

---

*miller Co.* v. *Fox*, 264 U. S. 426, 431; *Applybe* v. *United States*, 32 F. 2d 873, opinion denying rehearing, 33 F. 2d 897. And see the Second Circuit cases cited in note 2, *supra*.

necessity brought about by South Carolina's adoption of an "Ordinance of Nullification." [8] That state ordinance authorized state officials to seize property that had been distrained or levied on by federal officers and provided that South Carolina state courts could issue writs of replevin to take such property out of the hands of federal officials. The plain object of the 1833 Act was to counteract this state ordinance and it therefore specifically provided that property held under United States revenue laws should not be "repleviable." This statute went on to say that property so seized should be considered as "in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." 4 Stat. 633. This law, originally passed to protect the custody of property seized by federal revenue officers against more or less summary state court action, should not now be construed as justifying summary proceedings for determining the rights of *any* litigant to property seized by federal officers. In placing these cases exclusively within the jurisdiction of the federal courts, Congress did not indicate any intention to relax or alter the safeguards of plenary proceedings generally applicable to property controversies in federal courts.

Even if § 2463 could somehow be construed as transferring custody of property seized by revenue officers into the hands of officers of the federal courts it would by no means follow that cases and controversies involving ownership of that property should be tried in summary fashion. It is true that courts have sometimes passed on ownership of property in their custody without a plenary proceeding where, for illustration, such a proceeding was

---

[8] "An Ordinance, To Nullify certain Acts of the Congress of the United States, Purporting to be Laws, laying Duties and Imposts on the Importation of Foreign Commodities." 1 Statutes at Large of South Carolina 329 ff.

ancillary to a pending action or where property was held in the custody of court officers, subject to court orders and court discipline. See, *e. g., Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 355.[9]  But here there is no situation kindred to that in *Go-Bart.*  What is at issue here is an ordinary dispute over who owns the right to collect a debt—an everyday, garden-variety controversy that regular, normal court proceedings are designed to take care of.  As the District Court pointed out in its opinion, there is ample authority for petitioner to have its claim adjudicated by the Federal District Court but that should be done in a plenary not in a summary proceeding.

*Affirmed.*

---

[9] See also *Cogen* v. *United States,* 278 U. S. 221, 225 (motion procedure upheld as ancillary to criminal action); *Weeks* ·v. *United States,* 232 U. S. 383, 398 (property, allegedly unlawfully seized, in possession of an "officer of the court"); *United States* v. *McHie,* 194 F. 894, 898 (property seized under purported authority of the court's own process, a search warrant).

Those cases that have required the Government to bring a plenary action in forfeiture proceedings promptly after seizing property, on pain of an order to abandon the seizure and return the property, are plainly inapplicable here. See, *e. g., Goldman* v. *American Dealers Service,* 135 F. 2d 398; *Church* v. *Goodnough,* 14 F. 2d 432. In all these cases, stemming from a dictum in *Slocum* v. *Mayberry,* 2 Wheat. 1, 9–10, the threat of summary order was invoked under the equitable powers of the courts, not to adjudicate claims to the property but to compel the Government to bring an ordinary civil action, the only proceeding authorized in those cases, without unreasonable delay.