**CENTRAL SOUTH CAROLINA CHAPTER, SOCIETY OF PROFESSIONAL JOURNALISTS, SIGMA DELTA CHI, et al., Appellants,**

v.

**UNITED STATES DISTRICT COURT FOR the DISTRICT OF SOUTH CAROLINA et al., Appellees.**

No. 76–1757.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 1, 1976.

Decided Jan. 13, 1977.

**560**

T. Travis Medlock, Columbia, S. C. (Medlock & Davis, Columbia, S. C., on brief), for appellants.

Glen E. Craig, Asst. U. S. Atty., Columbia, S. C. (Mark W. Buyck, Jr., U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., on brief), for appellees.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The district court, in the criminal case of *United States v. J. Ralph Gasque*, et al., No. 76–104, in the District of South Carolina, entered an order, previous to the trial, which has not yet been held, regulating the conduct of the participants in the trial and the conduct and seating of the press in the courtroom.

From this order, Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi, (Society) appeals those parts regulating the conduct of the participants in the trial and the conduct of the press in the courtroom.

It is clear, so far as this record now shows, that the criminal case involved was of great public interest and that it is easily classified as a widely publicized or sensational case as mentioned in the report of the Committee on the Operation of the Jury System hereinafter referred to. The defendant Gasque, for example, was a State Senator and was in a campaign for reelection at the time the order was entered. Extensive press coverage followed the case.

The order, set out in the margin,[1] prohibited participants in the trial, including lawyers, parties, witnesses, jurors, and court officials from making "extrajudicial statements which might divulge prejudicial matter not of public record," and from "mingling with or being in proximity" to reporters and photographers in the environs of the court. It prohibited the release of names and addresses of prospective jurors, and the sketching or photographing of jurors within the environs of the court. It prohibited witnesses from news interviews during the trial period.

Pursuant to Rule 21(b) of the Federal Rules of Appellate Procedure, we entered an order permitting the district judge and the parties to the criminal action to respond to the purported appeal, for which purpose we treated the papers as a petition for mandamus. The Society is not a party to the criminal prosecution. Pursuant to 28 U.S.C. § 1651, we also entered a stay of the order.

We think the answer of the district judge correctly points out that we should not grant relief upon the petition for mandamus. We, therefore, vacate the stay, and, for reasons indicated below, dismiss the appeal.

▪ This court may issue all writs "necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651. But the traditional use of the writ of mandamus under the All Writs Act, "in aid of appellate jurisdiction . . . has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1942). In issuing this order, the district judge neither exceeded nor refused to exercise jurisdiction. The most that the Society can claim is that he has erred in matters within his jurisdiction. Extraordinary writs do not reach to such cases. *Parr v. United States*, 351 U.S. 513, 520, 76 S.Ct. 912, 100 L.Ed. 1377 (1955).[2]

▪ A writ of mandamus is not a substitute for an ordinary suit. It will issue

---

1. The order reads in pertinent part as follows:

"For reasons appearing to the Court, it is Ordered that the above case is scheduled for trial in the United States District Courtroom, Columbia, South Carolina, on June 21, 1976. It is further Ordered that

"(1) Extrajudicial statements by participants in the trial, including lawyers, parties, witnesses, jurors and court officials, which might divulge prejudicial matter not of public record in the case are prohibited.

"(2) All participants in the trial, including lawyers, parties, witnesses, jurors and other officials shall avoid mingling with or being in the proximity of reporters, photographers and others in the entrances to and the hallways in the courthouse building, including the sidewalks adjacent thereto, both in entering and leaving the courtroom and the courthouse during recesses in the trial.

"(3) The names and addresses of prospective jurors are not to be released except on Order of Court, and no photograph shall be taken and no sketch made of any juror within the environs of the Court.

"(4) All witnesses are prohibited from news interviews during the trial period.

"(5) The United States Marshall at the direction of the Court will allocate seating of spectators and representatives of the news media, provided, however,

(a) No member of the public or news media representative shall be permitted at any time within the bar railing, except to specific seats designated for their use.

(b) Allocation of seats to the news media representatives, if there be an excess of requests, will take into account any pooling arrangement that may be agreeable among the newsmen."

The Society did not contest the validity of section five of the order.

2. See also *Will v. United States*, 389 U.S. 90, 98, n. 6, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967):

only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable. *United States v. Wilbur*, 283 U.S. 414, 420, 51 S.Ct. 502, 75 L.Ed. 1148 (1930). It has been said that the writ of mandamus will not issue to compel an act involving the exercise of judgment and discretion, *Louisiana v. McAdoo*, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L.Ed. 1506 (1913), and that a Court of Appeals cannot use the writ to actually control the decision of the trial court, *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), although the standard at least once has been stated in this court as abuse of discretion. *Akers v. N&W Ry.*, 378 F.2d 78 (4th Cir. 1967).

■■■ The order issued by the district judge was a result of his judgment that it was necessary to protect the defendant's right to a fair trial. We do not reach the merits of the order and we express no opinion concerning its validity. We note only that it involved the exercise of judgment by the district court on a question not nearly conclusively settled in law, especially adversely to the opinion of the district court, that is, whether, rather than prohibiting the press from publishing information already obtained, *which the district court did not do, and which may only be done in extraordinary circumstances* not shown to be present here, it may indirectly prevent the press from obtaining information by regulating trial procedures and ordering the trial participants not to speak with members of the press.

In view of *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), and *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1973), the Society's right to relief from the order is far from clear and indisputable. Even considering abuse of discretion to be the standard, that has not been shown. Thus, we do not grant relief on the petition for mandamus.[3]

" . . . Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. 'Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable.' *De Beers Consol. Mines. Ltd. v. United States*, 325 U.S. 212, 223, 225, 65 S.Ct. 1130, 1136, 89 L.Ed. 1566 (1945)." (dissenting opinion of Mr. Justice Douglas).

3. We note that in *Chase v. Robson*, 435 F.2d 1059 (7th Cir. 1970), the court held that mandamus was proper to review an order issued at the time of pre-trial motions in a criminal prosecution. That order, similar to the one before us, prohibited counsel and defendant from making statements concerning the trial to the press. The court held the order constituted a clear abuse of discretion and thus was a proper subject for mandamus. The opinion points out that the defendant in the criminal case was a petitioner and should not be required to await conviction and appeal. In the case before us, the defendant in the criminal case makes no objection to the order complained of. Whether he may validly complain is not a case before us, and we express no opinion on the question. *In re Oliver*, 452 F.2d 111 (7th Cir. 1971), involved a similar question decided in the context of an attorney's disciplinary proceeding.

In *CBS, Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975), the court granted mandamus in a situation more analogous to that existing here. In the case of *Krause v. Rhodes*, a widely publicized case, the trial court had ordered that counsel, court personnel, parties and the parties' relatives, close friends, and associates to refrain from discussing in any manner whatsoever the case. The court ordered the district court to vacate this order, holding that the standard was that the activity restrained must pose a clear and present danger or a serious or imminent threat to a protected or competing interest, p. 238, which, of course, would be the right to a fair trial.

*Chase*, *Oliver*, and *CBS* were followed by *Nebraska Press Association*, which not only cited *Sheppard* with approval, it added emphasis to the fact that *"the trial courts must take strong measures to ensure that the balance is never weighed against the accused."* 427 U.S. p. 553, 96 S.Ct. p. 2800. And included in the quotation from *Sheppard* by the *Nebraska* court is the standard that " . . . where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial," the judge should continue the case, transfer it, sequester the jury, or see that neither "the ac-

In *Sheppard,* the Supreme Court suggested several remedial procedures to prevent prejudicial publicity: closely regulating conduct of newsmen in the courtroom, insulating witnesses, and proscribing "extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters, such as the refusal of Sheppard to submit to interrogation or take any lie detector tests . . . the identity of prospective witnesses or their probable testimony; any belief in guilt or innocence; or like statements concerning the merits of the case." 384 U.S. at 361, 86 S.Ct. at 1521. Thus, we see that, on its face, the district court's order falls within the *Sheppard* prescription. The Report of the Committee on the Operation of the Jury System on the "Free Press—Fair Trial" Issue, 45 F.R.D. 391, especially 404–13, is of like effect.

In *Nebraska Press Assoc. v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), the Court struck down an order *restraining publication* of confessions, admissions, or facts "strongly implicative" of the accused in a widely reported murder of six persons. The order also prohibited reporting or commentary on judicial proceedings held in public. But, in so doing, it did not overrule *Sheppard.* Indeed, the Court cited with approval several passages from the *Sheppard* opinion, including the following:

> "Due process requires that the accused receive a trial by an impartial jury free. from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, *the trial courts must take strong meas-*

cused, witnesses, court staff, nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." P. 553, 96 S.Ct. p. 2800.

We construe the *Nebraska* opinion, so far as it may be read to permit the previous restraint of information already in the hands of the press, to require a clear and present danger to a fair trial. See *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). But where the trial court finds there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, although there may be

*ures to ensure that the balance is never weighed against the accused*

. . . . .

*Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming within the jurisdiction of the court should be permitted to frustrate its function.* Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." (Emphasis added by the Court in *Nebraska* ).

Finally, in *Pell,* the press challenged a regulation by the California Department of Correction on first amendment grounds. The regulation prohibited interviews with specific individual inmates. The Supreme Court upheld the regulation, saying: . . "[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." 417 U.S. at 833, 94 S.Ct. at 2810. From these cases, it can be seen that the Society's right to the relief it seeks is far from clear and indisputable.

▮▮ We also dismiss the Society's attempted appeal from the district court's order. It is clear that the Society should not participate in a case to which it is not a party. Even in civil cases, intervention requires an interest in the transaction or property before the court. FRCP 24. But the Society has no interest in the determination of the defendant's guilt or innocence to justify its intervention. Moreover, there is no counterpart to intervention in the criminal law or rules.

But it has been suggested that in keeping with the spirit of the Federal Rules,[4] we

no clear and present danger, we think the court in *Nebraska* has approved the standard set out in *Sheppard,* and that the order of the district judge here in question has not been shown on this record to violate the *Sheppard* standard as it regulates the conduct of the participants in the trial.

4. *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), suggests that decisions on the merits should not be based on the technicalities of procedures of pleading:

now treat the Society's motion for a stay in the district court as a complaint initiating an action against the district court's order, that is, that we treat this case as one which may be initiated on motion without a complaint. See *Di Bella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1961); *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1930); *Cogen v. United States,* 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1928).

In *Go-Bart,* the Supreme Court permitted a third person to make a motion in a criminal case for return of his illegally seized property, even though the movant was not a defendant, himself, and had no stake in the defendant's guilt or innocence. Rule 41(e)[5] of the Federal Rules of Criminal Procedure is not inconsistent with the *Go-Bart* procedure and authorizes the court to proceed on the motion without a complaint. But the situation described in Rule 41(e) is different in every respect from the situation here. The court does not have in its custody property belonging to the Society.[6] No illegal search or seizure has been made. To allow a proceeding by motion in this case under Rule 41(e) would not advance the purpose of that Rule, which was to implement the exclusionary rule. See *Jones v. United States,* 362 U.S. 257, 260, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Finally, we think Justice Black's opinion in *New Hampshire Fire Ins. Co. v. Scanlon,* 362 U.S. 404, 80 S.Ct. 843, 4 L.Ed.2d 826 (1959), is persuasive against extending this procedure to cases which do not precisely fall within Rule 41(e) because the proceeding initiated on motion without a complaint is a summary procedure. In *New Hampshire Fire,* the Internal Revenue Service, in order to collect unpaid taxes, levied on a debt allegedly owed by the City of New York to the taxpayer. Rather than file a complaint, the insurance company filed a petition in the district court to quash the levy arguing that the debt was owed not to the taxpayer but to the insurance company. The Supreme Court was unwilling to let the insurance company bring its claim by way of petition and summary procedure, although an ordinary civil suit would have been filed:

" . . . [T]he Federal Rules of Civil Procedure, 28 U.S.C.A., provide the normal course for beginning, conducting and determining controversies. . . . Rule 3 provides that 'A civil action is commenced by filing a complaint with the court.' . . . Other rules set out in detail the manner, time, form and kinds of process, service, pleadings, objections, defenses, counterclaims and many other important guides and requirements for plenary civil trials. The very purpose of summary rather than plenary trials is to escape some or most of these trial procedures. Summary trials, as is pointed out in the petitioner's brief, may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes

---

" . . . 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80. The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action'."

**5.** (e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained . . .

**6.** In *Austin v. United States,* 297 F.2d 356 (4th Cir. 1961), this court on a Rule 41(e) motion by a defendant in a criminal case considered the suppression of evidence, prior to indictment, that was not tangible personal property, but was, instead, information acquired from the defendant through the allegedly fraudulent and deceitful practices of IRS agents. The court held that such information may be suppressed, but that decision brings this case no closer to a Rule 41(e) motion. The Society is not seeking to suppress any of the evidence in Senator Gasque's trial, nor has it given any information to enforcement officers under fraudulent or deceitful circumstances.

even ex parte. . . . In the absence of express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law.

\* \* \* \* \* \*

"It is true that courts have sometimes passed on ownership of property in their custody without a plenary proceeding where, for illustration, such a proceeding was ancillary to a pending action or where property was held in the custody of court officers, subject to court orders and court discipline. See, e. g., *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 355, 51 S.Ct. 153, 157, 75 L.Ed. 374. But here there is no situation kindred to that in *Go-Bart*. What is at issue here is an ordinary dispute over who owns the right to collect a debt—an everyday, garden-variety controversy that regular, normal court proceedings are designed to take care of." 362 U.S. at 406–407, 409–410, 80 S.Ct. at 845.

The Society has shown no reason why its claim should be determined in a summary proceeding. Nor do we find any authorization for so treating it. We realize that questions concerning press coverage deserve timely consideration. See *Nebraska*, 427 U.S. at 539, 96 S.Ct. 2791, yet no reason is shown why that might not otherwise be attained than by the disruption of a criminal trial. Our stay order has insured continuity of such rights thus far.

We are of opinion, therefore, that this case should not be treated as one initiated by motion without complaint. Since we find nothing in the criminal law or rules permitting the Society to intervene in this case, to introduce collateral issues, and to disrupt the pending criminal trial, we dismiss the appeal.

We emphasize that anything we have said touching the merits of the orders entered by the district court is to illustrate that the claim that the district court had a

duty not to enter the order is not so clear as to warrant mandamus and is not a holding that the claim of the Society necessarily has no merit. We express no opinion on that question. If a separate suit is appropriate by the Society, our opinion here should not be construed as making that matter *res judicata* upon a proper record. We do not treat this as a garden variety case.

In conclusion, treating the papers filed as a petition for mandamus, the petition is denied; treating the papers filed as an appeal from the orders of the district court, the appeal is dismissed. It follows that our stay previously entered is dissolved.

CRAVEN, Circuit Judge, concurring and dissenting:

I regret very much that we cannot decide the merits of this confrontation between fair trial and free press, but I agree with my brothers that because the facts have not been developed in the district court we could write, at most, an advisory opinion.[1] I would not, however, dismiss the appeal, but would, instead, hold that there is appellate jurisdiction and remand to the district court for a trial on the merits with instructions that the district court then find facts as required by the Seventh Circuit in *Chase v. Robson*, 435 F.2d 1059 (1970).

I.

I respectfully dissent from my brothers' decision to dismiss the appeal on the ground that "the Society should not participate in a case to which it is not a party." *Supra* at p. 563.

The court has embraced uncritically the doctrine that non-parties lack standing to appeal, so that the Society, not being a party to the criminal action, cannot appeal from an interlocutory order therein, however damaging its effect upon their First Amendment interests. Professor Moore

---

1. Although my brothers disclaim deciding the merits, they nevertheless construe *Nebraska Press Assoc. v. Stuart, supra,* as approving the standards of *Sheppard v. Maxwell, supra.*

Since they have done so, I am compelled to express my disagreement, but the time for an exposition of it is not yet, and, because of dismissal, will be a little longer coming.

formulates the basic idea less categorically: *"Ordinarily,* only a person who was a party in the court below and who is aggrieved by the judgment or order can appeal therefrom." 9 Moore's Federal Practice ¶ 203.06, at 715 (1975) (emphasis added). His adverb admits of exceptions—and exceptions there both are and must be if we are not to lose sight of the very purpose behind this judgemade rule. *See West v. Radio-Keith Orpheum Corp.,* 70 F.2d 621, 623 (2d Cir. 1939); *United States v. Schiavo,* 504 F.2d 1 (3d Cir. 1974); and *Overby v. United States Fidelity & Guaranty Co.,* 224 F.2d 158 (5th Cir. 1955).

The rule embodies the generally valid assumption that non-parties, as to whom final decisions are not res judicata, do not have a sufficient interest in the controversy to lodge an appeal. Ordinarily, they have *nothing* at stake, for the law has never recognized a philosophical concern as a legal interest. *Bodkin v. United States,* 266 F.2d 55 (2d Cir. 1959). *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). As such, the party-only appeals rule merely reflects an early approach to the "case or controversy" requirement of Article III of the Constitution—and, more particularly, to that subclass of jurisdictional concerns commonly known as "standing" to litigate. *See West v. Radio-Keith-Orpheum Corp., supra,* 70 F.2d at 623, Wright, Miller & Cooper, Federal Practice & Procedure, § 3531 (1975). But where the assumption that only parties are interested is not true and a non-party *is* aggrieved, we are free to exercise our constitutional and statutory jurisdiction. This is especially so since on its face our jurisdictional statute, 28 U.S.C. § 1291, does not limit appeals to parties, but contemplates appeals from all final decisions.

As Learned Hand observed in *West v. Radio-Keith-Orpheum Corp., supra,* 70 F.2d at 624:

The reason for [the party-only appeals doctrine] is that if not a party, the putative appellant is not concluded by the decree, and is not therefore aggrieved by it. *But if the decree affects his interests, he is often allowed to appeal.*

(Emphasis added.) Accordingly, in a case like this one, the Third Circuit allowed the media to appeal from a "gag" order entered in a criminal case. *United States v. Schiavo, supra.*

The basic question of standing to litigate should be directly faced. It should not be avoided by resort to an inaccurate and outmoded presumption that non-parties cannot be harmed by what happens in someone else's lawsuit. No court has seriously questioned the litigable interest of the media in contesting a "gag" order. For instance, in *C.B.S., Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975), *supra* at p. 562 n.3, in which the gag order ran solely against the parties, the court found that the local media was clearly aggrieved thereby:

Although the news media are not directly enjoined from discussing the case, it is apparent that significant and meaningful sources of information concerning the case are effectively removed from them and their representatives. To that extent their protected right to obtain information concerning the trial is curtailed and impaired.

522 F.2d at 239.[2] And despite my own fearful concern over the abuse of the "standing" requirement to avoid hard questions, I am confident here that not even a tortured application of that concept can plausibly deny the Society standing to litigate on appeal the validity of this "gag" order—or, which is the same thing, to have brought an original action in this regard. *Compare Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943), *with Eisenstadt v. Baird,* 405 U.S. 438, 443–46, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Indeed, by discussing the merits of the Society's mandamus petition, the court itself has implied-

---

**2.** That conclusion, of course, applies here *a fortiori* since paragraph (3) of the court's order, banning all photographing and sketching at tri-

al, runs *directly* against the press; and, arguably, so does paragraph (4), banning news interviews by participants. *See* p. 56, *supra.*

ly and rightly resolved the basic question in appellant's favor.

## II.

Accepting the court's opinion on its own terms, there is no reason why we may not properly treat the Society's motion for a stay in the district court as a complaint initiating an action against the district court's promulgation of "gag" rules. Despite Rule 7(a), a complaint is a complaint whether or not the word complaint appears on the paper writing. Indeed, Rule 8 of the Federal Rules of Civil Procedure talks about "claims for relief" and specifically provides that pleadings shall be construed so as to do substantial justice. I do not believe that any federal court would today hold that a complaint may be dismissed purely because it is not denominated as such, and I do not think the majority opinion goes quite so far. But if it does not, I fail to see why my brothers are unwilling to treat the motion for a stay as a complaint purely for purposes of appellate jurisdiction. I am sensitive to the thought that the harassed and overburdened district judge probably did not think of the motion as a complaint, but remand, with an instruction to treat it as such, prejudices neither him nor anyone else and would save a lot of wasted motion, time, and money.

Aside from whether the paper writing was given its proper name below, there is authority for the proposition that some causes of action can be begun without any complaint. The Supreme Court has twice so held: *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); *Cogen v. United States,* 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275 (1929). *See* 2 Moore's Federal Practice ¶ 3.04 (1975). I think this is such a case.

## III.

Since it seems to me there is appellate jurisdiction on any of the above theories, I am not much concerned that my brothers conclude that mandamus does not lie. But both the Sixth and Seventh Circuits have concluded otherwise, as my Brother Widener recognizes. *Chase v. Robson,* 435 F.2d 1059 (7th Cir. 1970); *In re Oliver,* 452 F.2d 111 (7th Cir. 1971); *C.B.S., Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975).

## IV.

This is one of those unfortunate procedural decisions that is of no help to anyone and really does not matter except in terms of delay. I think we can safely assume (unless their clients' money is exhausted) that as soon as counsel learn of our dismissal they will simply take the motion for a stay previously filed in the district court, perhaps change it a little and denominate it a "complaint," and file it and have it served on the judge. If the judge then denies a motion for a stay of his "gag" rules, counsel will then again ask this court for a Rule 8 stay order and will again appeal. And around we will go again. Today's decision not to proceed is the kind of expensive non-decision point that provokes Professor Frank to wonder if the elephant has not become too large to stand on his pedestal, and causes him to recommend that:

All rules or statutes governing procedure should be carefully analyzed to ensure that their application *will not take undue court time or add to the cost of litigation.* The presumption in favor of economy and speed is rebuttable where fairness is at stake, but it is a strong presumption all the same.

J. Frank, American Law 69, 85, 90 (1969) (emphasis added.)