[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court for decision is the Receiver's motion seeking an order to National Grange Mutual Insurance Co. (National) to show cause why it is not liable to pay $514,128.97, as surety, on account of sums owed by Berkshire Construction Company, Inc. (Berkshire). National has entered a limited appearance for the purpose of objecting to the Court's personal jurisdiction over National and the propriety of a show cause proceeding. The Court's subject matter jurisdiction is pursuant to G.L. 1956 § 8-2-13.
 Facts and Travel
Marandola Mechanical, Inc., (Marandola) a Rhode Island corporation located in Warwick, Rhode Island, was in the business of providing heating and plumbing services. On November 13, 2000, Anthony Marandola, Marandola's president and sole shareholder, petitioned the Court to appoint a permanent receiver of the corporation. The petition was granted and on December 9, 2003, a permanent receiver was appointed.
On July 15, 2004, the Receiver engaged special counsel to investigate, prosecute and collect Marandola's outstanding accounts receivable and contracts receivable. Five such accounts pertain to subcontract work Marandola performed for Berkshire on different construction projects. All of the projects were bonded by National. Marandola submitted notices of claims to Berkshire, which was in receivership itself, and National for payment for work performed but not paid for. National has refused to pay the outstanding balance. Subsequently, the Receiver's special counsel brought the instant motion.
National argues that the Receiver does not have authority to bring a summary proceeding, such as a show cause proceeding, to determine National's liability to Marandola. Rather, National contends, the proper procedure would be to either (1) make National a party to the receivership or (2) to bring a separate action against it, thereby preserving National's due process rights. The Receiver, on the other hand, asserts that a show cause proceeding is within the proper exercise of the Court's equitable powers. Specifically, the Receiver argues that summary proceeding is appropriate as long as National is given a fair opportunity to present its claims and defenses and that the burden is on National to show that it would be better able to defend its interests in a plenary suit. SEC v. Elliot, 953 F.2d 1560, 1567 (11th Cir. 1992); SEC v.Wencke, 783 F.2d 829, 836 (9th Cir. 1986).
 Analysis
The issue before the Court is whether summary process is an appropriate method by which the Receiver may bring a claim against a surety. This Court holds that it is not.
"A summary proceeding ordinarily implies one begun without summons or subpoena and is usually tried upon affidavits and upon short notice, or determined even as an ex parte matter." 2 Clark on Receivers § 584 (3d. ed. 1992); see also Bonaventure v. Pourciau, 577 So.2d 742, 745 (La.App. 1991) (summary proceeding is one which is conducted with rapidity, within delays allowed by court, and without citation and observance of all formalities required in ordinary proceedings). In contrast, plenary suits proceed on formal pleadings. Central Republic Bank Trust Co. v.Caldwell, 58 F.2d 721, 731 (8th Cir. 1933). The differences between the two types of proceedings were succinctly summarized by the Eight Circuit:
 "The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or by rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had. Id.[1]
Summary trials were practically unknown at English common law and in the absence of express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law. New Hampshire Fire Insurance, Co. v. Scanlon,362 U.S. 404, 407 (1960). This is because a summary trial of controversies is an exception to our method of administering justice.Id. at 406. It avoids compliance with the formal trial procedures set forth in the Rules of Civil Procedure such as those regulating time, manner and form of objections, defenses and counterclaims.[2] Id. More importantly, in a show cause proceeding, unlike plenary action, the burden of proof is shifted from the party claiming relief to the party against whom relief is asserted.
A receiver cannot utilize summary process to seize property in the possession of a stranger to the record who claims title and right to possession. Roberts v. Golden Flake Doughnut Shops, Inc., 53 R.I. 465,467-68, 167 A. 259, 260 (1933). The proper procedure is for the receiver to bring an independent action against the adverse claimant or to have the claimant made a party to the receivership proceedings. Id.; see also
2 Clark on Receivers at § 584 (where "the property is in the possession of a third person who claims the right to retain it, the receiver must either proceed by suit in the ordinary way to try his right to it, or the complainant shall make such third person a party to the suit and apply to have the receivership extended to the property in his hands"). Summary process may be appropriate where the res is in possession of the court or where the adverse party's claim is a pretense or merely colorable. Woodv. National Corporation, 265 F. 791, 792 (D. Pa. 1919). However, if the adverse claimant asserts a real claim of right, "the court will not deal with such person in a summary way, but will require the receiver to assert his claims of right by plenary process." Id. at 793. In other words,
 "When, however, the property in controversy is not in the possession of the court, but in possession of a third party who makes claim thereto of such a character that he has a right to have the merits of his claim judicially determined, his right to have his claim judicially determined remains unaffected by the receivership proceedings and all the rules of law pertaining to remedies and the jurisdiction of courts continue in full force and must be followed." 2 Clark on Receivers at § 584.
The case at bar does not fit squarely within Golden Flake because this is not a fight over property. Despite the language used by the parties, the dispute is not over the accounts receivable or even a right to payment. Rather, it is an ordinary claim against a surety. This distinguishes it from Golden Flake and cases like it. Therefore, the Court believes that a better method of analysis is one that focuses on the actual nature of the claim.
It is a bedrock principle of receiverships that a receiver stands in no better shoes than the debtor company and has no higher rights than that which the company has. White v. Ewing, 159 U.S. 36, 39 (1895); Vitteritov. Sportsman's Lodge Restaurant, Inc., 102 R.I. 72, 80, 228 A.2d 119,124-25 (1967) (generally, a receiver succeeds only to the debtor's rights and takes the debtor's property subject to claims, liens and equities which would affect the debtor if he himself were asserting his interest in the property); 2 Clark on Receivers, § 362. If Marandola were not in receivership, clearly, the proper procedure by which to collect money owing to it under the construction contracts would be through an ordinary, plenary, civil action. It is true that summary process may be appropriate in some circumstances, such as allowing or disallowing particularly small and inconsequential claims against the debtor. 2 Clarkon Receivers § 547(b). However, an "everyday, garden variety controversy" such as the matter at hand, concerning seemingly real defenses to a demand for payment under a contract is precisely the type of dispute that "regular, normal court proceedings are designed to take care of," including, if appropriate, summary judgment.[3] Scanlon, 362 U.S. at 410
(summary process inappropriate to adjudicate, as between the Department of Revenue and a surety of the taxpayer, who owns the right to collect the taxpayer's account receivable).
National asserts that in addition to its affirmative defenses, it may wish to remove to federal court, or to have its claims arbitrated, as provided for in its Payment Bond. The Court will not pass on the validity of these assertions other than to note that it is precisely for these reasons that a show cause proceeding is improper in this instance. More is at stake than just the protections afforded by the Rules of Civil Procedure. Indeed, allowing Marandola to proceed against National without either joining it as a party, if appropriate, or instituting a separate suit against it, would deprive National of the panoply of rights and remedies ordinarily available to the typical litigant. Moreover, ordering National to show cause why it should not have to pay Marandola would impermissibly excuse Marandola's fundamental responsibility of proving its claim.
The Receiver, in support of his position that a show cause proceeding is appropriate in this case, draws the Court's attention to two cases where receivers were appointed in connection with litigation brought by the Securities and Exchange Commission (SEC). Because of the distinct factual circumstances of both cases, the Court finds that neither case is applicable to the issue at hand. In SEC v. Elliot, the SEC brought suit against Charles Elliot and a number of his companies for various violations of the Securities and Exchange Act. 953 F.2d at 1564. The Federal District Court granted an injunction enjoining further securities violations and appointed a receiver to take possession of the defendant companies' assets, file an initial report on the state of the assets, and to propose a plan of distribution of assets to the victims of the defendants' fraud. Id. at 1564-65. The receiver received nearly two thousand claims and the determination of these claims involved disentangling the threads of a massive Ponzi scheme. The court dealt with these claims through summary process, giving notice to the claimants and allowing a short period for filing objections. Some of the claimants appealed the receiver's Proposed Plan for Distribution of Assets, objecting to the summary process utilized to administer their claims and objections. The Eleventh Circuit, while emphasizing the court's equitable powers to fashion relief, held that in some cases, the claimants should have been afforded the opportunity to present evidence on their behalf.Id. at 1568. As to other claimants, the court held that the appellants did not show how their rights would have been better protected by fuller proceedings. Id. at 1570-71.
The factual circumstances in Elliot distinguish it from the case at hand. There, where there were thousands of claims submitted to the receiver, many of them legally similar, plenary process was not feasible. Here, the Receiver seeks to enforce a claim against a single entity. In Elliot, the court relied on the general rule that summary process may be used in a receivership but still held that some claims necessitated more than just a summary process to be fair. Likewise, this Court believes that the Receiver's claim against National requires more than summary process to be fair. Summary process would shift the burden of proof from the Receiver to National; it would deprive National from the ability to remove the dispute to federal court, and would prohibit National from enforcing the arbitration clause in the Bond Agreement.
It is worth emphasizing that Elliot presented the typical receivership fact pattern where creditors of the debtor submitted claims to the receiver, thereby voluntarily submitting themselves to the jurisdiction of the court and its equitable powers. This common scenario is substantively dissimilar from the one at bar where the Receiver is pursuing a claim against a non-party to the receivership. As noted by the Supreme Court in Ewing, it is an entirely correct proposition that,
 "there is a distinction between cases where parties are brought before the court for the purpose of the payment to them of claims they may hold against the estate, and cases where it is sought to receiver of them claims which the receiver insists they owe the estate; that the receiver stands in the shoes of the company, and has no higher rights than the corporation. . . ." 159 U.S. at 39.
The second case, SEC v. Wencke, involved a situation where a receiver was appointed to investigate and trace all ill gotten gains that had been looted from three companies and to bring disgorgement proceedings.783 F.2d 829, 832 (9th Cir. 1986). Mr. DeLusignan was a shareholder who was served with one of the receiver's disgorgement applications, but was not made a party to the litigation. He objected to the post judgment summary process before a magistrate used to determine whether he should have to disgorge any profits. The Ninth Circuit held that his due process rights were not violated by use of summary process because he was given notice concerning the nature of the proceedings, permitted extensive discovery, was given the opportunity to present evidence, question witnesses and the district court applied the Federal Rules of Evidence and Civil Procedure. Id. at 836-37. In sum, Mr. DeLusignan was afforded every procedural protection of plenary process, minus the formal filing of a complaint and answer. Id. After reading Wencke, this Court finds no guidance therein. Like Elliot, Wencke relies on the general proposition that receivers may utilize summary process while acknowledging that it may not be proper in every case. As noted before, unlike the claimants inElliot, or the target of a disgorgement application inWencke, National has demonstrated that substantial rights that it would ordinarily be afforded through plenary process would be denied to them in a summary proceeding.
 Conclusion
After careful consideration of the parties' arguments and a thorough review of the case law, the Court denies Marandola's motion to show cause because summary process would not provide National the procedural rights normally afforded to litigants.
Order to enter.
[1] Although Central Republic was decided long before the adoption of the modern rules of civil procedure, this fact does not affect the disposition of the case at bar because the essential aspects of summary proceeding remain unchanged.
[2] The Rules of Civil Procedure regarding process and pleading do not apply to receivership petitions. R.I. Super. R. Civ. P. 81(a)(1).
[3] National asserts more than just a colorable claim against the funds. National has submitted an analysis by Meridian Consulting Group on the Payment Bond claims to the Court that indicates that a legitimate dispute exists regarding Marandola's right to payment. The consultant's report reflects, inter alia, that as of October 17, 2003 Marandola had not yet completed its work at the Ballentine Hall project, and that on the Centrex project, National had already paid out claims under its Payment Bond to Marandola's subcontractors and suppliers in excess of the original contract value.