Kyle R. WEEMS, Trustee in Bankruptcy for Hamilton Mortgage Corporation, and the Federal Deposit Insurance Corporation, Liquidator for the Hamilton National Bank of Chattanooga, Plaintiffs-Appellees,

v.

Walter J. McCLOUD, II et al., Defendants,

Walter J. McCloud, II, and Charles S. Wilder, Jr., Defendants-Appellants.

Kyle R. WEEMS, Trustee in Bankruptcy for Hamilton Mortgage Corporation, and the Federal Deposit Insurance Corporation, Liquidator for the Hamilton National Bank of Chattanooga, Plaintiffs-Appellees Cross-Appellants,

v.

Walter J. McCLOUD II, et al., Defendants,

Walter J. McCLOUD, II, and Charles S. Wilder, Jr., Defendants-Appellants Cross-Appellees.

Nos. 78–1540, 78–1541.

United States Court of Appeals, Fifth Circuit.

June 25, 1980.

Randall L. Hughes, Charles R. O'Kelley, Jr., Atlanta, Ga., for defendants-appellants.

Johnson & Montgomery, Albert S. Johnson, Harmon W. Caldwell, Jr., Atlanta, Ga., for plaintiffs-appellees.

Before GEE, TJOFLAT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This is a consolidation of two cases involving two separate tracts of land located in Gwinnett County, Georgia. Plaintiffs-appellees, Weems and The Federal Deposit Insurance Corporation (FDIC) sought confirmation of the nonjudicial sale of each tract of land conducted pursuant to a power of sale contained in security deeds they held as successors in interest respectively to Hamilton Mortgage Corporation and The Hamilton National Bank of Chattanooga. In each case, the court below denied confirmation of the sales but granted Weems and the FDIC permission to resell the property. Defendants-appellants, McCloud and Wilder, bring this appeal with respect to the grant of permission to resell arguing (1) that subject matter jurisdiction does not obtain, (2) that the court below improperly struck proffered defenses, (3) that the court improperly struck counterclaims, and (4) that the court improperly denied McCloud and Wilder a jury trial. Weems and the FDIC have brought a cross-appeal only with respect to case No. 78–1541, arguing that the trial court improperly denied confirmation because the record demonstrates the effective bid price exceeded the fair market value of the property. In each case, we affirm the trial court's decision in part and reverse in part.[1]

---

1. These two cases contain issues similar to those in *Federal Deposit Insurance Corp. et al. v. New London Enterprises, Ltd. et al.*, No. 78–1399, 619 F.2d 1099, decided this date by this panel.

In 1973, McCloud, C. L. Flake, Jr.,[2] and Wilder executed two notes to Hamilton Mortgage Corporation, each note secured by a tract of land in Gwinnett County, Georgia.[3] In 1974, these notes and their accompanying security deeds were modified to increase the indebtedness.[4] In 1975, Hamilton Mortgage transferred a 60.08% interest in these notes and security deeds to The Hamilton National Bank of Chattanooga ("Bank"). The Bank was declared insolvent in February, 1976, by the Comptroller of the Currency and the FDIC was appointed receiver. The FDIC was subsequently made liquidator of the Bank. Hamilton Mortgage was adjudicated bankrupt in March, 1976, at which time Weems was appointed as trustee. After McCloud, Flake and Wilder defaulted on the two notes, Weems, as trustee, and the FDIC, as liquidator, pursuant to a power of sale contained in each security deed, advertised the two tracts for sale and conducted nonjudicial foreclosure sales of the property by public outcry on the steps of the Gwinnett County Courthouse. Weems and the FDIC were high bidders at the auction.[5] Subsequent to the sale, Weems and the FDIC timely filed a Report of Sale Under Power in federal district court, requesting that the sales be confirmed. Confirmation is necessary under Georgia law for any subsequent deficiency action. After a hearing on the merits, the district court denied confirma-

tion of the sales, but granted Weems and the FDIC permission to resell the two tracts of land.

I. Subject Matter Jurisdiction.

In their Report to the district court, Weems and the FDIC alleged jurisdiction pursuant to 12 U.S.C.A. § 1819 (West 1969).[6] The pertinent part of this statute states that the FDIC shall have power,

> To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy . . . .

McCloud and Wilder contend that a Georgia confirmation proceeding is a summary proceeding with such peculiar characteristics that it does not come within the scope of "suits of a civil nature at common law or in equity" as that phrase is used in § 1819. Because this is a question of first impression for this Court, a careful description of the nature of a Georgia confirmation is in order.[7]

Under Georgia law, a creditor is not required to obtain confirmation of a nonjudi-

---

**2.** Flake has not brought an appeal of the trial court's decision.

**3.** The note in 78–1540 was in the original principal amount of $483,000. The note in 78–1541 was in the original principal amount of $338,-600.

**4.** The note in 78–1540 was increased to $578,-000. The note in 78–1541 was increased to $733,600.

**5.** In 78–1540, the bid price was $237,000. In 78–1541, the bid price was $458,000.

**6.** In *FDIC v. New London Enterprises, supra,* note 1, jurisdiction in a Georgia confirmation was alleged under 28 U.S.C.A. § 1348 as well as under 12 U.S.C.A. § 1819. Because we find jurisdiction to obtain pursuant to § 1819, we do not address either here or in *New London Enterprises* whether § 1348 also establishes jurisdiction.

Reference is made to page 1101, note 3 of *New London Enterprises,* for a discussion of why we believe abstention is inappropriate.

**7.** In *United States v. Golf Club Company,* 435 F.2d 9 (5th Cir. 1970), this Court addressed the merits of a Georgia confirmation brought in federal district court without comment on the jurisdictional issue. Those district courts which have addressed this question have consistently either held or noted in dictum that jurisdiction would obtain under § 1819. *FDIC v. Realtract, Inc.,* C.A.No.C77–12A (N.D.Ga., May 19–25, 1977) (J. Henderson); *FDIC v. M. O. Lee Construction Co., Inc.,* C.A.No.CV477–115 (S.D.Ga. October 4, 1977) (J. Lawrence); *FDIC v. Four Oaks Construction Corp.,* C.A.No. C77–1256A (N.D.Ga., October 31, 1977) (J. Freeman). Those cases above which have only stated in dictum that jurisdiction obtains under § 1819 have held jurisdiction is established under 28 U.S.C.A. § 1348.

cial sale, but such sales must be confirmed by a court before the creditor may sue the debtor for any deficiency resulting from the sale. Ga.Code Ann. §§ 67–1503—05 (Supp. 1979).[8] These statutes were enacted in 1935 to remedy the abuse resulting during the depression when many mortgagors were forced into bankruptcy because of deficiency judgments obtained after nonjudicial foreclosure sales in which mortgagees acquired the property at nominal or depressed bids. *Thompson v. Maslia*, 127 Ga.App. 758, 195 S.E.2d 238 (1972). The obvious purpose of these statutes is to protect debtors from deficiency judgments when the forced sale of their property brings less than fair market value.

A confirmation proceeding begins with a report of the sale to the judge of the superior court of the county where the land lies. Ga.Code Ann. § 67–1503. This is a court of general jurisdiction, Ga.Const. Art. VI, Sec. IV, Par. III; Ga.Code Ann. § 2–3303; and is the court with exclusive jurisdiction in cases of divorce, in criminal cases where the offender is subject to loss of life or confinement, in cases respecting titles to land, and in equity cases. Ga.Const. Art. VI, Sec. IV, Par. I; Ga.Code Ann. § 2–3301. The requirement that the report of the sale shall be made to the judge of the superior court of the county in which the land lies has been held to be a venue requirement which may be waived by the debtor, and not a jurisdictional requirement. *Grizzle v. Federal Land Bank of Columbia*, 145 Ga.App. 385, 244 S.E.2d 362 (1978). The Georgia Court of Appeals at one time held that

confirmations brought in federal district court did not comply with the requirement that confirmation be brought in the county where the land lies, and that accordingly, confirmations brought in federal district courts would not be honored in subsequent deficiency actions in state court. *Windland Company v. FDIC*, 151 Ga.App. 742, 261 S.E.2d 407 (1979). The Georgia Supreme Court has only recently reversed this holding, *FDIC v. Windland Company*, 245 Ga. 194, 264 S.E.2d 11 (1980), clearly ruling that confirmation proceedings conducted in federal district courts comply with § 67–1503 for the purposes of deficiency suits later brought in state courts.

A confirmation proceeding is summary in nature. The mortgagee initiates a confirmation not by filing a complaint with the clerk of the court, but rather by reporting the sale within 30 days directly to the appropriate judge. *Dukes v. Ralston Purina Company*, 127 Ga.App. 696, 194 S.E.2d 630 (1972). Only a five-day notice of the confirmation hearing need be given the debtor. There is no requirement that a debtor be given notice of the hearing, but any debtor not given timely notice may not be held liable in any subsequent deficiency action. *First National Bank & Trust Company v. Kunes*, 230 Ga. 888, 199 S.E.2d 776 (1973). While the debtor is not required to file an answer to the mortgagee's report, he is permitted to raise objections. *Wall v. Federal Land Bank of Columbia*, 240 Ga. 236, 240 S.E.2d 76 (1977). Typically, debtors in Georgia have responded with answers to the report. In keeping with a confirma-

---

**8.** The text of the statutes is as follows:

67–1503 Confirmation of sales under powers. When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon.

67–1504 Payment of true market value as condition precedent to confirmation of sale. The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale.

67–1505 Notice of hearing. Resale ordered, when. The court shall direct notice of the hearing to be given the debtor at least five days prior thereto, and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may, for good cause shown, order a resale of the property.

tion's summary nature, the statutes specify the issues the court may consider. Section 67–1504 indicates that the court must receive evidence concerning the true market value of the property sold, and Section 67–1505 provides that the court is to pass as well on the legality of the notice, advertisement, and regularity of the sale. In applying these statutes, the Georgia courts have stated that the duty of the court is "to test the fairness of the technical procedure of the actual sale and to insure that the sale has brought at least the true market value of the property." *Jones v. Hamilton Mortgage Corp.*, 140 Ga.App. 490, 231 S.E.2d 491 (1977). Later cases have limited the inquiry concerning fairness of the technical procedure to issues relating to whether the bidding was chilled or whether the bid price was below market value. *Shantha v. West Georgia National Bank,* 145 Ga.App. 712, 244 S.E.2d 643 (1978); *Keever v. General Electric Credit Corporation of Georgia,* 141 Ga.App. 864, 234 S.E.2d 696 (1977).[9] A debtor may raise defenses which relate to the true market value or the specified issues of fairness in the technical procedures. The debtor may not raise counterclaims or ask for any alleged excess resulting from the sale. *Peachtree Mortgage Corporation v. First National Bank of Atlanta,* 143 Ga.App. 17, 237 S.E.2d 416 (1977). Nor may the debtor raise the issue of the existence of a default,[10] the amount of the debt, or the existence of any side agreement which could have been the basis of an injunction

preventing the foreclosure sale. *Hamilton Mortgage Corporation v. Bowles,* 142 Ga.App. 882, 237 S.E.2d 198 (1977); *Jones v. Hamilton Mortgage Corp., supra.*

Although a confirmation is summary in nature, it is necessary that a hearing be held. *Lewis v. First National Bank of Atlanta,* 141 Ga.App. 338, 233 S.E.2d 465 (1977). Georgia's Civil Practice Act, Ga. Code Ann. Title 81A, establishes the rules of procedure to be followed in the hearing to the extent the rules are compatible with the special nature of confirmation. Ga. Code Ann. § 81A–181. The burden of proof is on the mortgagee to present evidence as to the fair market value of the property. *Thompson v. Maslia, supra.* The debtor has the right to cross-examine witnesses and to present his own evidence. While the judge is given wide discretion in deciding whether to confirm or deny confirmation, *Thompson v. Maslia, supra,* there must be some evidence in the record to support his findings. *Mallett v. Fulford,* 142 Ga.App. 200, 235 S.E.2d 650 (1977). As in other controversies in Georgia, when the judge sits as trier of fact, his finding will not be disturbed on appeal if there is any evidence to support it. *Thompson v. Maslia, supra.*

The judge hearing a confirmation is required to render a judgment with findings of fact. *Grizzle v. Federal Land Bank of Columbia, supra.* The judgment is not a personal judgment against any party, and strictly speaking, it does not adjudicate the title of the property sold.[11] *Wall v. Federal*

---

**9.** In *Shantha,* the Georgia Court of Appeals stated that "the court's inquiry should go only to the value of the real estate on the date of sale, in the course of the examination to determine which the fairness of the technical procedures used may be examined, but only for the purpose of making sure that the sale was not chilled and the price bid was in fact market value." 145 Ga.App. at 712, 244 S.E.2d at 644.

**10.** While the Georgia Supreme Court in *National Community Builders, Inc. v. Citizens & Southern National Bank,* 232 Ga. 594, 207 S.E.2d 510 (1974), did consider the existence *vel non* of a default in a confirmation proceeding, it did not expressly overturn the rule that default is not an issue in confirmation. Subsequent to *National Community Builders,* the Georgia Court of Appeals has consistently held

that the issue of a default *vel non* may not be raised by a debtor. *Peachtree Mortgage Corp. v. First National Bank of Atlanta, supra; Hamilton Mortgage Corp. v. Bowles, supra; Grizzle v. Federal Land Bank of Columbia, supra. Southwest Georgia Land Development Company v. Hillas,* 144 Ga.App. 670, 242 S.E.2d 267 (1978) noted the Georgia Supreme Court's action in *National Community Builders,* but nevertheless stated that the rule remains that default is irrelevant in confirmation.

**11.** It must be noted, however, that a judgment confirming a sale will remove at least one cloud on the title of the property, *i. e.,* that arising from any question concerning the regularity of the sale, while a denial of confirmation may require setting a sale aside. *Jones v. Hamilton*

*Land Bank of Columbia, supra.* The judgment may either confirm or deny confirmation, or order a resale of the property. This judgment cannot be collaterally attacked in a subsequent deficiency action but is accorded the same respect as other judgments of a court of general jurisdiction. *Teri-Lu, Inc. v. Georgia Railroad Bank & Trust Co.,* 147 Ga.App. 860, 250 S.E.2d 548 (1978). A party dissatisfied with the judgment in a confirmation proceeding may appeal to the Georgia Court of Appeals. *Dockery v. Parks,* 224 Ga. 369, 162 S.E.2d 332 (1968).

The Georgia courts have given no clear characterization to confirmation proceedings. The Georgia Supreme Court has noted that this statutory proceeding is not a suit in equity. *Dockery v. Parks, supra.* The Georgia courts have also characterized the statutes establishing confirmation as being in derogation of the common law. *Dukes v. Ralston Purina Company, supra.* The confirmation proceeding itself has been held not to be a "suit" but rather an "application to the Judge of the Superior Court." *Jonesboro Investment Trust Association v. Donnelly,* 141 Ga.App. 780, 234 S.E.2d 549 (1977). In *Jonesboro,* it was held that because a confirmation is not a suit, the normal pleading requirement that a plaintiff allege its authority to sue does not apply. In *Wammock v. Smith,* 143 Ga.App. 186, 237 S.E.2d 668 (1977), it was held that because a confirmation is not a suit, a foreign trustee need not comply with Ga.Code Ann. § 108–438, requiring the filing of a certified copy of the trustee's appointment before he may sue. The Georgia Supreme Court has also held that a confirmation proceeding is not a "civil case" as that term is used in Ga. Const. Art. VI, Sec. XIV, Par. VI, Ga.Code Ann. § 2–4306, establishing as a venue requirement that civil cases which do not affect title to land or are not equitable in nature be tried in the county where the defendant resides. *Wall v. Federal Land Bank of Columbia, supra.* Yet, the Georgia courts have also characterized a confirmation proceeding as a "bench trial." *Jones v. Hamilton Mortgage Corporation, supra.*

In determining whether federal courts have jurisdiction over Georgia confirmation proceedings, we are not bound by the characterizations given a proceeding by a state. As the Fourth Circuit stated in *Markham v. City of Newport News,* 292 F.2d 711, 716 (4th Cir. 1961):

> [I]t is apparent that a court, in determining its own jurisdiction, must look to the constitution and the laws of the sovereignty which created it. The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts . . . . .
> It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.

Accordingly, we must look to federal court decisions to find the appropriate standard to determine whether a Georgia confirmation is a "suit of a civil nature at common law or equity." Not surprisingly, since § 1819 is concerned with the relatively limited realm of litigation involving the FDIC, there are no cases interpreting this phrase as it occurs in the statute. However, the predecessors to the present removal statute contained the phrase, "any suit of a civil nature, at law or in equity . . . ,"[12]

---

*Mortgage Corp., supra*; Pindar, *Ga. Real Est. Law,* § 21–86.

12. The Judicial Code of 1911, c. 231, 36 Stat. 1087, § 28, repealed by Act, June 25, 1948, c. 646, § 39, 62 Stat. 992, eff. September 1, 1948, read in pertinent part:

> Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States

are given original jurisdiction by [Part I of] this title . . . ., in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by [Part I of] this title . . . ., in any State court, may be removed into the district court of the United States for

which was given extensive interpretation by federal courts. We turn to these cases for aid.

It is clear that the fact that a confirmation proceeding has peculiar procedural rules and serves a specialized function does not preclude it from being a "suit at common law or in equity" for federal jurisdictional purposes. *In re Silvies River*, 199 F. 495, 501 (D.C.Or.1912) remarked:

> The phrase 'suits at common law and in equity' embraces not only ordinary actions and suits, but includes all the proceedings carried on in the ordinary law and equity tribunals as distinguished from proceedings in military, admiralty, and ecclesiastical courts. It is a very comprehensive term, and is understood to apply to any proceedings in a court of justice by which an individual pursues a remedy which the law affords. . . .
> And the state cannot, by creating special proceedings or special tribunals, deprive the federal court of jurisdiction of such a suit or prevent a removal. *In re The Jarnecke Ditch* (C.C.) 69 Fed. 161.

The Supreme Court in holding that an eminent domain proceeding was removable to federal courts, noted that a state could not circumvent the removal statutes by instituting a proceeding different from that typically found in an ordinary trial. *Madisonville Traction Company v. Saint Bernard Mining Company*, 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462 (1905). The Court in *Madisonville Traction* quoted favorably from Mr. Justice Brewer, who in *Colorado Midland Railway Co. v. Jones*, 29 F. 193 (D.C.Colo. 1886), stated,

"I do not suppose that a State can, by making special provisions for the trial of any particular controversy, prevent the exercise of the right of removal. If there was no statutory limitation, the legislature could provide for the trial of many cases by less than a common-law jury, or in some other special way. But the fact that it had made such different and special provisions would not make the proceeding any the less a trial, or such a suit as, if between citizens of two States, could not be removed to the Federal Courts. If this were possible, then the only thing the legislature of a State would have to do to destroy the right of removal entirely would be to simply change and modify the details of procedure."

*Madisonville Traction*, 196 U.S. at 249, 25 S.Ct. at 255.[13]

In *Madisonville Traction*, the question was whether a condemnation proceeding could be removed to federal courts. There, a private company with the power of eminent domain could, upon filing with the clerk of the county court a description of the land to be condemned, cause commissioners to be appointed to assess damages. The commissioners would file a report with the clerk of the county court, which would issue process against the owners to show cause why the report should not be confirmed. If either party filed exceptions, the matter would be tried by a jury. Judgment was to be rendered in conformity with the verdict. The Supreme Court held that

the proper district by the defendant or defendants therein.

The Judiciary Act of 1887, c. 373, 24 Stat. 552, as amended in 1888, c. 866, 25 Stat. 433, read in pertinent part:

Sec. 2. That any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any State court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper

district. Any other suit of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any State court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State.

13. *See Markham v. City of Newport News, supra,* for an excellent discussion of various cases in which the Supreme Court has found jurisdiction despite state attempts to preclude federal jurisdiction by limiting the courts in which actions may be brought.

despite the unusual character of this proceeding, it nevertheless was a "suit" within the meaning of the removal statutes. In reaching this decision, the Court emphasized the fact that the proceeding was held before a judicial tribunal and involved property rights.

In *Road District v. St. Louis Southwestern Railway Company*, 257 U.S. 547, 42 S.Ct. 250, 66 L.Ed. 364 (1922), the question was whether a condemnation proceeding was a "suit at common law or in equity." The condemnation procedure would begin with a road district submitting a plan for improvement with the county court. The county court would then appoint assessors who would file an assessment of enhanced values as well as damages to be sustained by the properties affected. A day for hearing objections by the land owners before the county court would be established and duly advertised by the court. Land owners could make objections in writing to the assessment of enhanced value or damages. The Supreme Court assumed that oral evidence would be taken in the proceeding and that attorneys could take part in the hearing. After the hearing, the county court would enter its findings confirming the assessment of benefits and damages. The order of the court had the force and effect of a judgment against the real property making the assessments liens on the property which could be collected through equitable proceedings. The judgment was deemed final and conclusive and incontestable except by direct attack on appeal. The Supreme Court, finding this proceeding to be within federal removal jurisdiction, emphasized that the proceeding was before a judicial tribunal.[14] Other factors which the

Court considered were (1) that the written assessments and the written objections were comparable to pleadings, (2) that oral evidence was heard and attorneys could take part in the hearing, (3) that the findings of the county court had all the force and effect of a judgment against the property and was incontestable except by appeal, (4) that there were adversary parties, and (5) that the claim of one of the parties against the other was capable of pecuniary estimation.

We note that most, if not all, of the conditions relied upon in *Madisonville Traction* and in *Road District* are met here. A Georgia confirmation proceeding is held before the judicial tribunal of general jurisdiction. If the creditor wishes to bring a deficiency suit, at least five days notice of the hearing must be given the debtor and service must be by the method specified in the Civil Practice Act. The report of the sale is comparable to a complaint, and any written objections are comparable to answers. There is a requirement of a hearing at which debtors may be represented by counsel and have an opportunity to introduce evidence, cross-examine, and raise defenses. There must be findings of facts and a judgment confirming, or not confirming the sale, or ordering a resale. This judgment may be appealed and cannot be collaterally attacked. There are adversary parties. Confirmation is a prerequisite of liability on any deficiency. While there is not a claim for pecuniary recovery, there is an issue of pecuniary value—*i. e.,* the true market value of the land—which has an effect on the pecuniary recovery available in a later action for deficiency. Because of

---

**14.** The Court noted, "The distinction between a proceeding which is the exercise of legislative power and of administrative character and a judicial suit is not always clear. An administrative proceeding transferred to a court usually becomes judicial, although not necessarily so." 257 U.S. at 554, 42 S.Ct. at 253.

*Village of Walthill, Nebraska v. Iowa Electric Light and Power Company,* 228 F.2d 647 (8th Cir. 1956), cited by McCloud and Wilder, is distinguishable from the case *sub judice* on this ground. In *Village of Walthill,* a condemnation proceeding before three state district court

judges appointed by the Nebraska Supreme Court to appraise the assets and property of a utility to be taken by a city was held not to be a "civil action" under our current removal statute. The Eighth Circuit reasoned that the three district judges were not a regular judicial tribunal, but merely served the same functions as a board of appraisers in the rather special circumstance of a city condemning a utility to acquire public ownership. There is no question here that the superior courts in Georgia are regular judicial tribunals.

these similarities, we hold that a Georgia confirmation proceeding is a "suit of a civil nature at common law or in equity" and that jurisdiction obtains under § 1819.[15]

## II. Stricken Defenses.

McCloud and Wilder in response to the report filed by Weems and the FDIC raised numerous defenses.[16] The trial court in both cases denied the first two defenses relating to lack of jurisdiction and failure to state a claim upon which relief can be granted, which denial we affirm. The court below struck all other defenses as being irrelevant to the subject matter of a confirmation proceeding.[17] We disagree

**15.** McCloud and Wilder argue that a Georgia confirmation proceeding is local in nature, thus precluding federal jurisdiction. In saying this proceeding is local, they apparently mean that the requirement that the proceeding be brought in the superior court of the county where the land lies reflects a procedure intended to insure that an official familiar with property values in the community will ascertain true market value. We do not accept the proposition that this is an action local in nature, requiring specialized knowledge of land values in the community. First, the Georgia Supreme Court in *Windland* has held that confirmation in federal district court suffices for a later deficiency action in state courts, even though many federal district judges will not be from the county where the land lies. Second, this requirement is not jurisdictional and may be waived by a debtor. *Grizzle v. Federal Land Bank of Columbia, supra.* Third, there must be some evidence presented upon which the judge may base his determination of value, precluding a decision based solely on the judge's own knowledge of land values. *Mallett v. Fulford, supra.*

**16.** The defenses alleged in No. 78–1540 are in essence as follows (the numbers correspond to the counts in McCloud and Wilder's answer; repetitious defenses within a count have been omitted): (1) lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; (3) estoppel; (4) waiver; (5) no default on underlying loan instruments; (6) set-off for counterclaims; (7) laches; (8) failure to report to Judge of the Superior Court of Gwinnett County; (9) failure to file a report with the Superior Court of Gwinnett County; (10) denial of federal due process; (11) denial of due process under the Constitution of Georgia; (12) denial of right to jury trial under Georgia Constitution; (13) denial of right of jury trial under Federal Constitution; (14) failure of bid to equal or exceed true market value; (15) federal action should be stayed because of report filed in Gwinnett County; (16) denial of several allegations in the report plus an allegation that a portion of property described in legal description in advertisement and at courthouse steps had been released; (17) demand for jury trial; (18) disagreement between Weems and FDIC precluded McCloud and Wilder from developing property, resulting in needless interest expense and loss of profits; (19) the bidding was chilled in that (ii) Weems and the FDIC willfully and intentionally caused the property to be sold at a time when, because of other foreclosures they were conducting, the real estate market was depressed, (iii) the foreclosure sale was conducted in an unfair manner, and (iv) a portion of the property advertised had been released; (20) a settlement agreement among the parties precluded foreclosure; (21) the Hamilton Mortgage Corporation wrongfully dishonored a draft in contravention to a letter of credit.

In No. 78–1541, the same defenses were raised with the exception that there was no allegation that a portion of the property advertised had been released. McCloud and Wilder raised the following additional defenses (the numbers correspond to the counts in McCloud and Wilder's answer; repetitious defenses within a count have been omitted): (7) the parties are joint venturers and the partnership has not been dissolved; (9) failure to join an indispensable party; (17) as joint venturers, Weems and the FDIC are entitled only to contribution to the partnership; (19) the legal description of the property in the advertisement and as read at the courthouse steps was different from that in the security deed; (22) bidding was chilled in that (ii) Weems and the FDIC willfully and intentionally caused the property to be sold at a time when, because of other foreclosures, they were conducting, the real estate market was depressed, (iii) Weems and the FDIC willfully and intentionally caused the sale without explanation in their advertisement concerning how they were empowered to conduct the foreclosure in light of the fact that record title to the security deed was held by Manufacturer's Hanover Trust Company by virtue of assignment from Hamilton Mortgage Corporation, (iv) while the advertisement stated the property was sold subject to three prior security deeds, Weems and the FDIC willfully and intentionally failed to disclose they held these three senior security deeds and had no intention to foreclose upon them, (v) the foreclosure sale was conducted in an unfair manner, and (vi) the legal description of the property in the advertisement was not the same as that of the security deed.

**17.** We note that while the trial court included the defense that the true market value was not bid among the defenses stricken as irrelevant, it nevertheless made a finding of fact that the true market value was not bid.

with this aspect of the court's judgment and hold that certain of the defenses were improperly stricken.

■ As McCloud and Wilder appeal only the order granting a resale, we must ascertain which of their enumerated defenses are relevant to the question of "good cause" which § 67–1505 specifies as grounds for a resale. With respect to the issue of confirmation itself, we have seen that the only relevant defenses are those which go to the question of true market value and to the fairness of the technical procedure, the latter being limited to defenses which indicate the sale was chilled or the bid price was not market value. *Shantha v. West Georgia National Bank, supra; Keever v. General Electric Credit Corporation of Georgia, supra.* McCloud and Wilder concede that, with respect to the issue of confirmation *vel non*, the above are the only defenses which may be raised. They contend, however, that there is no similar limit to defenses relating to whether the court had "good cause" to order a resale. With respect to "good cause," they argue that a debtor may raise any defense which may go to the equities of granting a resale.[18] We reject this argument.

■ While no Georgia court has expressly addressed the question of whether the "good cause" requirement of resale permits any equitable defense, those Georgia cases granting a resale have considered only the same issues which are relevant to the confirmation issue itself, *i. e.,* true market value and the fairness of the sale as related to whether or not the bidding was chilled and whether or not the bid price was true market value. Also, Georgia courts have granted resales only when they find that a mortgagee has in good faith bid a price less than the true market value. *Homes of Tomorrow, Inc. v. Federal Deposit Insurance Corp.,* 149 Ga.App. 321, 254 S.E.2d 475 (1979); *Adams v. Gwinnett Commercial Bank,* 140 Ga.App. 233, 230 S.E.2d 324, *aff'd,* 238 Ga. 722, 235 S.E.2d 476 (1977); *Davie v. Sheffield,* 123 Ga.App. 228, 180 S.E.2d 263 (1971). These cases establish that a defense to a resale order must bear upon the question of the good faith of the mortgagee in the conduct of the sale and in his bid, and must be a defense otherwise relevant to the issue of confirmation *vel non.*[19]

Applying this test, we conclude that the trial judge improperly struck several defenses as irrelevant.[20]

■ With respect to both cases, we hold that the district court erred in striking the defense alleging that Weems and the FDIC willfully and intentionally caused the property to be sold at a time when, because of other foreclosures being conducted by Weems and the FDIC, the real estate market in Gwinnett County was depressed.[21] We note that it is no defense in Georgia if market values are depressed by general eco-

---

**18.** The thrust of McCloud's and Wilder's argument is that since § 67–1505 states that the court is to "pass upon the legality of the notice, advertisement, and regularity of the sale," and that the court also may "for good cause shown" order a resale, "good cause" constitutes a separate issue independent of all the other issues a debtor may raise as a defense. "Good cause", they maintain, encompasses all the equitable defenses a debtor could raise in a deficiency suit before the passage of §§ 67–1503—05.

**19.** Evidently, the reason for the paucity of cases on the meaning of "good cause" is that creditors typically do not request a resale as an alternative to confirmation in their report of the sale. *See Adams v. Gwinnett Commercial Bank, supra.* The Georgia courts have accordingly rarely ordered resales. Despite this pau-

city of cases, we believe it to be clear that defenses relating to resale are limited to those relating to confirmation. In *Adams,* a debtor objected to the granting leave to resale on the grounds that the issue had not been litigated. The Georgia Court of Appeals rejected this argument, holding that in any confirmation proceeding, the issue of resale is litigated as part of the issue of confirmation.

**20.** In applying this test to the defenses proffered by McCloud and Wilder, we express no opinion concerning the merit of the defenses. We determine only whether or not a defense of a particular kind is relevant to the issue of resale.

**21.** In 78–1540, this is defense 19(ii). In 78–1541, this is defense 22(ii).

nomic factors. *Scroggins v. Harper*, 138 Ga.App. 783, 227 S.E.2d 513 (1976). However, the defense raised here is that Weems and the FDIC by their own actions willfully caused a depression in real estate values. This defense goes directly to the issues of what the true market value of the property is, whether the technical procedure of the sale was fair, and whether the bidding was chilled. It is a question of fact for the trial court to resolve as to whether land values in the area have been affected by the actions of Weems and the FDIC, and whether they willfully and intentionally acted to cause such a depression.

When an advertisement states that the sale will be of the whole fee simple interest and for cash and does not mention outstanding security deeds, Georgia confirmation proceedings have addressed the issue of whether bidding was thereby chilled. *Scroggins v. Harper, supra; Walker v. Northeast Production Credit Association*, 148 Ga.App. 121, 251 S.E.2d 92 (1978); *Massey v. National Homeowners Sales Service Corporation of Atlanta*, 225 Ga. 93, 165 S.E.2d 854 (1969); *Sims v. Etheridge*, 169 Ga. 400, 150 S.E.2d 647 (1929). In case 78–1541, the advertisements did make reference to prior loan deeds and did state the sale would be subject to such loan deeds. The defense raised in this case is that Weems and the FDIC themselves held the prior loan deeds, that they had no intention of foreclosing them, and that their willful and intentional failure to disclose these facts chilled the bidding.[22] This is a novel theory which the Georgia courts have not addressed. Nevertheless, it remains a question of fact relevant to the question of whether the bidding was chilled, and to the question of the good faith of Weems and the FDIC, and should have been heard.

The asserted defense in 78–1541—that the bidding was chilled in that Weems and the FDIC willfully did not explain in the advertisement how they were empowered to foreclose when record title was in Hano-

ver's Manufacturers Trust Company—was relevant to confirmation.[23] *Cf. Giordano v. Stubbs*, 228 Ga. 75, 184 S.E.2d 165 (1971), *cert. denied*, 405 U.S. 908, 92 S.Ct. 960, 30 L.Ed.2d 779 (1972) (court addressed question of whether assignment by grantee of security deed and reassignment back immediately before nonjudicial sale chilled bidding). If there was a question as to who held title under the security deed and who was authorized to exercise the power of sale, such a question might affect the bidding. It might also raise an issue relating to the regularity of the sale. As this defense also bears on Weems and the FDIC's good faith, it should not have been stricken as irrelevant.

It is clear that an issue frequently raised and litigated in confirmation proceedings is whether the legal description contained in the advertisement was adequate. *National Community Builders, Inc. v. Citizens & Southern National Bank, supra; Five Dee Ranch Corp. v. Federal Land Bank of Columbia*, 148 Ga.App. 734, 252 S.E.2d 662 (1979). The advertisement must meet the requirements of Ga. Code Ann. § 39–1101 requiring "a full and complete description of the property." *Shantha v. West Georgia National Bank, supra*. Accordingly, in No. 78–1541, those defenses alleging the bidding to be chilled because the legal description in the advertisements, and as read at the courthouse steps, was different from that in the security deed, would be relevant to the issue of confirmation.[24] Likewise, in No. 78–1540, the defenses that the bidding was chilled because a portion of the property advertised had been previously released from the security deed would be relevant to the issue of whether the advertised description of the property adequately described the property actually being sold.[25] *Cf. Norwood Realty Company v. First Federal Savings & Loan Association of Atlanta*, 99 Ga.App. 692, 109 S.E.2d 844 (1959) (advertised description

---

**22.** This is defense 22(iv).

**23.** This is defense 22(iii).

**24.** These are defenses 19(ix) and 22(vi).

**25.** These are defenses 16(xii) and 19(iv).

omitting parcel which had been previously released is adequate). Although these defenses would be relevant on the issue of confirmation, there is no allegation that Weems and the FDIC willfully or intentionally misdescribed the property sold. Therefore, there is no issue as to whether the failure to properly describe the property was part of an attempt "to sell and buy the property intentionally at a price less than the true market value." *Adams v. Gwinnett Commercial Bank, supra.* Accordingly, these defenses are irrelevant with respect to the issue of resale and were properly stricken.

■■■■■■ With respect to the defenses in both cases that Weems and the FDIC did not bid the true market value, the trial court's judgment technically included this defense among those stricken as irrelevant.

Because the trial court also found in both cases that the true market value had not been bid, inclusion of this defense among those deemed irrelevant was harmless.[26]

■■ All the remaining defenses raised by McCloud and Wilder in both cases are irrelevant to the question of confirmation, and thus, *a fortiori*, are irrelevant to the issue of resale. The trial court committed no error in striking these remaining defenses.

### III. Counterclaims

■■ McCloud and Wilder in each case attempted to assert four counterclaims, all of which were struck by the trial judge as exceeding the scope of a confirmation proceeding under Georgia law.[27] They argue that Fed.R.Civ.P. 13[28] mandates considera-

---

**26.** Because McCloud and Wilder did not allege that Weems and the FDIC had intentionally bid less than true market value, this defense would not be relevant in any case to the issue of resale.

**27.** In 78–1540, the four counterclaims tracked the last four defenses and were for damages resulting from (1) a disagreement between Weems and the FDIC which precluded McCloud and Wilder from developing the property, resulting in needless interest expense and lost profits; (2) chilled bidding resulting from (a) Weems and the FDIC willfully and intentionally causing the property to be sold at a time when, because of other foreclosures they were conducting, the real estate market was depressed, (b) conducting the foreclosure sale in an unfair manner, and (c) improperly describing the property in that a portion had previously been released; (3) a settlement agreement among the parties which precluded foreclosure; and (4) the wrongful dishonoring of a draft by Hamilton Mortgage. With respect to (2) and (4), McCloud and Wilder sought punitive damages.

In 78–1541, the four counterclaims tracked the last four defenses, and three were the same as counterclaims (1), (3) and (4) in 78–1540. The fourth counterclaim sought actual and punitive damages because the bidding was chilled in that (a) Weems and the FDIC willfully and intentionally caused the property to be sold at a time when, because of other foreclosures they were conducting, the real estate was depressed; (b) Weems and the FDIC willfully failed to explain in their advertisement how they were empowered to conduct the foreclosure in light of the fact that record title to the security deed

was held by Manufacturer's Hanover Trust Company by virtue of assignment from Hamilton Mortgage Corporation, (c) while the advertisement stated the property was sold subject to three prior security deeds, Weems and the FDIC willfully and intentionally failed to disclose they held these three senior security deeds and had no intention to foreclose upon them, (d) the foreclosure sale was conducted in an unfair manner, and (e) the legal description of the property in the advertisement is not the same as that of the security deed.

**28.** Fed.R.Civ.P. 13 reads, in pertinent part:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

tion of their counterclaims.[29] Their argument rests on Rule 13 itself and on the contention that *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), dictates that Federal Rules of Civil Procedure are to be applied in all actions brought in federal courts. After a review of cases in which courts have refused to strictly apply the Federal Rules of Civil Procedure to special statutory proceedings, we conclude the trial court was correct in holding counterclaims to be outside the scope of Georgia confirmation proceedings.

We begin our analysis by noting that the Federal Rules of Civil Procedure are frequently applied less strictly in special statutory proceedings, where strict application of the rules would frustrate the statutory purpose.[30] In *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), a union member sought to intervene by right pursuant to Rule 24(a), Fed.R.Civ.P., in a suit filed by the Secretary of Labor to set aside an election of officers in the union. The suit was brought pursuant to § 402(b) of Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 482(b). The Supreme Court permitted the intervention, but limited the claims which could be asserted by the intervenor to those claims already being pressed by the Secretary. Finding that the legislative history revealed

a clear Congressional intent that the Secretary's action be the exclusive post-election remedy, the court made it clear that intervention under Rule 24(a) would be limited to those intervenors providing support for the Secretary's position, and would be limited to those claims being asserted by the Secretary. Significantly, the Court held that intervention, which would otherwise have been a matter of right under Rule 24(a), was precluded by Title IV with respect to claims other than those already being asserted by the Secretary. The Court reasoned that to permit such intervention would frustrate the purpose of the statute.[31]

Two circuits have since followed *Trbovich*, holding that winning candidates in elections being challenged by the Secretary—i. e., those candidates taking positions contrary to the Secretary's—cannot intervene in Title IV actions brought by the Secretary to contest the election. Both cases followed the reasoning of the Supreme Court, holding that intervention would frustrate the purposes of the Labor-Management Reporting and Disclosure Act. *Usery v. District No. 22, United Mine Workers of America*, 567 F.2d 972 (10th Cir. 1978); *Brennan v. Silvergate District Lodge No. 50, Int. A. of M. & A. W.*, 503 F.2d 800

---

29. We note that one counterclaim in each case clearly would be compulsory under Rule 13(a), *viz.* the counterclaim alleging chilled bidding. Because we hold below that no counterclaims, whether permissive or compulsory, may be asserted, we need not consider the classification of the other counterclaims. For the same reason, we need not consider whether it would be within the proper discretion of the district court to decline to permit the assertion of permissive counterclaims. *Compare* 3 Moore, *Federal Practice* ¶ 13.18, at p. 13–459 (2d ed. 1979) (leave of court is not prerequisite to pleading permissive counterclaim except in cases specified by Fed.R.Civ.P. 13(e) and (f)) with 6 Wright & Miller, *Fed. Practice & Procedure* § 1420 (1971) (court has discretion to refuse to entertain any counterclaim which would unduly complicate litigation).

30. Moore notes that "particularly special statutory actions may give rise to questions as to whether they are subject to the Federal Rules."

2 Moore, *Federal Practice*, ¶ 1.03[1] (2d ed. 1979).

31. In the recent case of *Califano v. Yamasaki*, 442 U.S. 686, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Court held that challenges to the recoupment procedure to recover overpayment of certain benefits brought under § 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), could be maintained as class actions under Fed. R.Civ.P. 23(b)(2) despite the strenuous objections of the Secretary of the Department of Health, Education and Welfare. The Court reasoned that in the absence of a direct expression of Congress in § 205(g) of an intent to depart from the Federal Rules, class relief would be appropriate in such actions. The clear implication of the Court's reasoning is that if a statute creating a cause of action clearly indicates a departure from the Federal Rules, then such a departure is to be honored. Here, the Georgia statutes clearly specify the issues which may be raised in a confirmation proceeding.

(9th Cir. 1974).[32] In *Silvergate*, the Ninth Circuit expressly rejected the contention that the intervention guidelines of Rule 24(a) controlled the issue. Referring to the Supreme Court decision in *Trbovich*, the Ninth Circuit said:

> The Court turned to Rule 24 only after it had considered the statutory bars to intervention. Therefore, we conclude that we must first decide whether intervention of the sort requested here is permitted by the statute before we can determine whether the applicable standards under Rule 24 are relevant.

Although *Trbovich, Silvergate* and *United Mine Workers* involved the application of the Federal Rules, or rather a limitation on that application, to a cause of action created by federal law, the reasoning of those cases would apply with equal force to special statutory actions created by state law. That reasoning applies in the instant case; the purpose of the Georgia confirmation proceeding would be frustrated by the strict application of Rule 13, permitting a debtor to delay the proceeding with assertions of counterclaims.[33]

The applicability of the Federal Rules has been similarly limited in another context. Actions by administrative agencies to compel testimony or the production of records are frequently treated in a summary manner by courts without strict adherence to the Federal Rules. 2 Moore, *Federal Practice*, ¶ 3.04 (2d ed. 1979). *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) (action by Internal Reve-

nue Service under 26 U.S.C.A. § 7604 to enforce summons does not permit intervention); *United States v. Friedman*, 532 F.2d 928 (3d Cir. 1976) (bank has no right for expenses under Fed.R.Civ.P. 45(b) incurred in complying with court order under 26 U.S.C.A. § 7604(b) to enforce IRS summons); *H. Kessler v. E.E.O.C.*, 53 F.R.D. 330 (N.D.Ga.1971), *aff'd in part*, 472 F.2d 1147 (5th Cir. 1973) (en banc) (target of EEOC's Demand for Access to Evidence has no right to discovery in EEOC's action to enforce its Demand). It is true that Rule 81(a)(3) Fed.R.Civ.P., which reads in pertinent part:

> These rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.

authorizes courts to deviate from the Federal Rules in these administrative actions. However, before the quoted sentence was added by the 1946 Amendment to Rule 81(a)(3), courts nevertheless did not strictly apply the Rules to administrative actions, because of their summary nature.[34] *Perkins v. Endicott Johnson Corp.*, 128 F.2d 208 (2d Cir. 1942), *aff'd*, 317 U.S. 501, 63 S.Ct. 35, 87 L.Ed. 492 (1943); *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450 (6th Cir. 1941).

---

**32.** *But see Hodgson v. Carpenters Resilient Flooring Local Union # 2212*, 457 F.2d 1364 (3d Cir. 1974), holding that an ousted union official may intervene in the certification proceedings following a court-ordered election, apparently reading *Trbovich* contrary to our reading, to say that intervention is to be determined solely on the basis of Rule 24. The Ninth Circuit in *Silvergate* and the Tenth Circuit in *United Mine Workers* considered and expressly declined to follow *Hodgson*.

**33.** In determining the application of the Federal Rules to special statutory proceedings created by state law, an additional factor supports adherence to the statutory proceeding. To the extent that the character of the special state proceeding would be changed by strict applica-

tion of the Federal Rules, forum shopping would be invited.

**34.** The Supreme Court in dictum has noted that the very purpose of summary trials, as opposed to plenary trials, is to escape some or most of the trial procedure specified in the Federal Rules. *New Hampshire Fire Insurance Co. v. Scanlon*, 362 U.S. 404, 406, 80 S.Ct. 843, 845, 4 L.Ed.2d 826 (1960). The Court there noted that in the absence of express statutory authorization, courts have been extremely reluctant to allow proceedings more summary than the full court trial at common law. *Id.* at 407, 80 S.Ct. at 845. In this case, we are presented with such express statutory authorization.

In *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), *cert. denied*, 371 U.S. 952, 83 S.Ct. 507, 9 L.Ed.2d 1500 (1963), this circuit held that an application by the Attorney General for a court order to obtain inspection of voter records pursuant to 42 U.S.C.A. § 1974 was not subject to the full scope of the Federal Rules for many of the reasons present in this case. There, this court emphasized that the lawsuit was not an ordinary civil action, but was a special statutory proceeding. This court noted that the proceeding was summary in nature, that the scope of the judicial function was limited and fixed by statute, and most significantly, that several procedural rules were inapplicable in light of the nature of the proceeding. *Id.* at 225–227.[35]

As we have noted above, the Georgia confirmation proceeding is summary and limited in nature. It is carefully and expressly designed to provide an immediate judicial evaluation of the fairness of nonjudicial sales. It is tailored to provide approval or disapproval of that limited issue, without the encumbrance of other disputes between the parties. To permit a debtor to assert counterclaims would convert the proceeding into a plenary trial between the parties, would eliminate its summary nature, and would deny the creditor his right to a quick approval of the sale. It would radically change the character and purpose of the special proceeding. It is for these reasons that we follow the reasoning of the cases cited above which refused to blindly follow the Federal Rules of Civil Procedure when to do so would frustrate the purpose, or destroy the summary nature, of a special, statutorily created cause of action.[36]

We are not convinced that *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), relied upon by McCloud and Wilder, is apposite to the instant case. *Hanna* involved the *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938), question of whether in a diversity suit against an executor for damages resulting from personal injuries, service of process was to be made in the manner prescribed by state law or the manner set forth in Fed.R.Civ.P. 4(d)(1). The state law required in hand delivery to the executor, while the Federal Rule permitted service upon a person of suitable age residing at the party's dwelling house. The Supreme Court held that the Federal Rule governed the means of service of process. We note that the suit

---

**35.** This court in *Lynd* did not rely on Rule 81(a)(3) Fed.R.Civ.P., although it did note the action is "comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." 306 F.2d at 225.

**36.** This circuit in *E.E.O.C. v. D. H. Holmes Co., Ltd.*, 556 F.2d 787 (5th Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978), held that when the EEOC brings a class action pursuant to § 706(f)(1), as amended, of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(f)(1) (West 1974), it is required to comply with Fed.R.Civ.P. 23. We reasoned there that nothing in the statutory language of Title VII, § 706(f)(1) exempted the EEOC from compliance with Rule 23. Rather, looking to legislative history, we discerned an intent on the part of Congress that Rule 23 be adhered to. We also took pains in *D. H. Holmes Co.* to demonstrate that the EEOC would not be unduly burdened in fulfilling its function by requiring it to comply with Rule 23; we noted that such compliance would serve important interests. The reasoning in *D. H. Holmes Co.* clearly indicates that there can be statutory exceptions to the Federal Rules of Civil Procedure; the case is therefore consistent with our opinion in this case.

The Ninth Circuit in *EEOC v. General Telephone Company of the Northwest*, 599 F.2d 322 (9th Cir. 1979), disagreed with our conclusion in *D. H. Holmes Co.* The Ninth Circuit began its reasoning by looking to the statutory language of § 706(f)(1) and its legislative history, but found no clear resolution of the issue. In holding that the EEOC, in § 706(f)(1) actions, need not comply strictly with Rule 23, the Ninth Circuit relied upon the special function of the EEOC to vindicate public policy, and upon the similarity between § 706(f)(1) actions and the pattern or practice suits by the Attorney General under § 707 of Title VII, with respect to which the court assumed there need not be strict compliance with Rule 23.

Since drafting this opinion the Supreme Court has upheld the Ninth Circuit's view in *General Telephone Company of the Northwest v. EEOC*, —— U.S. ——, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) on reasoning similar to that which we use. The four dissenting Justices adopted the reasoning of the Fifth Circuit in *D. H. Holmes Co.*

in *Hanna* was an ordinary tort action which involved a conflict between two purely procedural rules governing the manner of giving notice of the litigation. On the other hand, the instant case involves a determination of whether the Federal Rules can be applied in a limited fashion in order to conform to the necessities of a special proceeding, created by a statute which specifies the issues to be litigated and the procedure to be followed. We have discussed cases which have applied the Rules in limited fashion in order to conform to special statutory proceedings created by federal law, and we now extend the reasoning of those cases to similarly limit the application of the Rules in the context of a state-created special statutory proceeding. The state procedural statute in *Hanna* was not an inherent part of a special statutory proceeding; it was a general requirement concerning the mode of service of process of all actions by creditors against executors or administrators.[37] Here, Georgia, as part and parcel of the statute creating a unique cause of action, has ordained a procedural limitation barring counterclaims. Thus, we believe that a *Hanna* issue is not presented in this case.[38]

**37.** The Massachusetts courts had held that the state statute in *Hanna* applied to all actions without regard to the legal form. *Lynch v. Springfield Safe Deposit & Trust Co.*, 300 Mass. 14, 13 N.E.2d 611 (1938). It had been held to be applicable to actions in tort as well as contract and to actions in both law and equity. *New England Trust Co. v. Spaulding*, 310 Mass. 424, 38 N.E.2d 672 (1941).

**38.** Even if *Hanna* were apposite, we acknowledge a conviction that its proper application in this case would be consistent with our decision refusing to permit the assertion of counterclaims. *Hanna* held that a Federal Rule of Civil Procedure is to be applied in federal courts even though it alters the mode of enforcing a state-created right and even though choice of federal procedure over state procedure may be "outcome determinative." To determine whether a federal rule is to be used in a state-created proceeding, the Supreme Court held that the federal rule must be tested against constitutional restrictions and against the Rules Enabling Act, 28 U.S.C.A. § 2072, which reads in pertinent part:

The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts of the United States in civil actions.

Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury . . . .

The question presented in this case, posed in terms relevant to the *Hanna* case, would be whether the special procedures provided for in Georgia confirmations are part and parcel of the substantive rights thereby created.

In asking this question, we note that once before this circuit, in the more troublesome area of the applicability of state rules of evidence in federal courts, held that a state rule of evidence was so bound up with state substantive law that the state rule of evidence should be applied despite Fed.R.Civ.P. 43(a), mandating application of the Federal Rules of Evidence. *Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837 (5th Cir. 1976). *Conway* held that a state statute making remarriage of a spouse admissible must be followed in Texas wrongful death actions brought in federal courts. *Conway* was cited in dictum in *Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir. 1979) in support of the proposition that a state rule of evidence permitting admission of panel findings concerning malpractice is so bound up with Florida's malpractice cause of action that it must be followed in diversity actions in federal courts. 591 F.2d at 1168, n. 6. *Cf. E. L. Cheeney Company v. Gates*, 346 F.2d 197 (5th Cir. 1965) (holding, before 1975 amendment to Fed.R.Civ.P. 43(a), that state rule of evidence so intertwined with the state substantive action of negligent entrustment that state rule must be followed in federal diversity action.)

The same factors which convinced us that application of Rule 13 would frustrate the purposes of a Georgia confirmation action also indicate that to permit counterclaims would modify the creditor's substantive rights. The Georgia confirmation statutes were designed to protect debtors from deficiency judgments which might result from unfair, nonjudicially supervised sales. The special proceeding is carefully limited to narrow issues relating to the purpose of the statutes, *i. e.*, to insure that the bid price was true market value. The creditor's substantive rights include his right to a nonjudicial sale, subject only to the Georgia confirmation statutes which provide for immediate judicial evaluation of the limited matters relating to market value, and which provide for this judicial evaluation in a summary, *i. e.*, quick, proceeding. An essential part of the creditor's substantive right to a nonjudicial sale is the speed with which the sale may be confirmed. Thus, strict application of Rule 13 in this situation might very well modify the creditor's substantive right. In such case, *Hanna* would not require that the Federal Rule be followed.

We hold that the district court properly barred the assertion of counterclaims.

## IV. Right to Trial by Jury.

McCloud and Wilder in the court below argued that since their counterclaims demanded damages, such claims were legal in nature and entitled them to a jury trial on the basis of the reasoning in *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). As we have found McCloud and Wilder not to be entitled to assert counterclaims, this argument is without merit.[39]

## V. Denial of Weems and FDIC's Motion to Alter or Amend Judgment.

In case 78–1541, Weems and the FDIC made a motion to alter or amend the trial court's judgment under Fed.R.Civ.P. 59(e), requesting that the sale be confirmed. They based their motion on an argument that the record revealed that their bid price did exceed the true market value of the property.

In its findings, the trial court held that the true market value of the property was $497,211. Weems and the FDIC bid in $458,000. At the time of their bid, the property was subject to an encumbrance of $63,387 and a tax lien of $7,589. Weems and the FDIC contend that their bid was exclusive of the prior encumbrances and that thus their "effective bid price" for the property was $528,976.

We find no abuse of discretion in the trial court's refusal to amend its judgment for two reasons. First, nothing in the record unequivocally indicates that Weems and the FDIC's bid was only for the equity of the fee simple unencumbered by the prior encumbrances. If anything, the record indicates that the bid of $458,000 was for the entire fee simple as though it were unencumbered, since Weems' and the FDIC's expert testified that the value of the property, "viewed as being free and clear . . . without any existing mortgages or other encumbrances . . . .," was $458,000. Second, the trial court in response to Weems and the FDIC's motion indicated that its evaluation of $497,211 was for the equity remaining after the prior encumbrances.

For the reasons stated above, the order of the trial court in both cases ordering a resale is vacated and both cases are remanded for further proceedings consistent with this opinion. The cross-appeal of Weems and the FDIC is denied.

**VACATED AND REMANDED.**

---

Also pointing to the same conclusion is the fact that forum shopping would be encouraged by a contrary holding. *Hanna* makes clear that the effect on forum shopping is still relevant. If counterclaims were permitted in Georgia confirmation actions brought in federal court, then debtors would have a great incentive to remove such actions to federal court, and take advantage of the considerable delays which the federal litigation would afford. Finally, we note that our holding in this case is consistent with *Hanna's* dictum that a court "need not

wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts . . . ." 380 U.S. at 473, 85 S.Ct. at 1145.

**39.** *See FDIC v. New London Enterprises, supra*, note 1, where we hold that because a Georgia confirmation proceeding is essentially equitable in nature, a debtor does not have the right to a jury trial even where he does not assert a counterclaim.